UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

EIMAN OSTAD MOHAMMAD
SADEGHE MEMAR,

      Petitioner,

    v.                                  CAUSE NO. 3:26cv335 DRL-SJF

BRIAN ENGLISH,

      Respondent.

OPINION AND ORDER

Immigration detainee Eiman Ostad Mohammad Sadeghe Memar filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging that he is unlawfully confined in violation of the laws or Constitution of the United States. The respondent answered the petition, and Mr. Sadeghe Memar replied. The court now grants the petition.

Mr. Sadeghe Memar is a citizen and native of Iran who came to the United States in 2008 as a lawful permanent resident, as a child of a United States citizen, specifically his stepfather [13-1]. His immigration records list several criminal convictions, including a 2013 conviction for driving under the influence, a 2022 conviction for larceny, a 2022 conviction for retail theft, and a 2023 conviction for drug possession. The retail theft conviction led to removal proceedings being instituted against him under 8 U.S.C. § 1226(a)(2)(A)(iii) for an aggravated felony. He was detained by United States Immigration and Customs Enforcement (ICE) and issued a notice to appear in November 2024. He was ordered

removed to Iran on July 24, 2025, all understandable after his criminal history. He reserved appeal but did not file one.

Mr. Sadeghe Memar filed this habeas petition in March 2026, about seven months after his removal order became final, arguing his continued detention is unlawful because his removal is not reasonably foreseeable. He argues his removal is not reasonably foreseeable because Iran will not accept him for removal. He says ICE does not have an Iranian passport or birth certificate for him and Iranian officials have disavowed knowledge of his citizenship. Therefore, he claims Iran will not issue travel documents for him.

In answering the petition, the Warden (through his federal counsel) does not provide any evidence that ICE has taken steps to obtain travel documents for Mr. Sadeghe Memar. Instead, the Warden argues Mr. Sadeghe Memar has not met his initial burden to show removal is not reasonably foreseeable and asserts in the brief that ICE is working to execute the removal order and should be given more time to secure travel documents.

In reply, Mr. Sadeghe Memar details the steps that ICE has taken to obtain travel documents for him from Iran. He reports that in October 2025 the ICE officer handling his removal scheduled a phone call for him with the Iranian consulate. He says he spoke to the Iranian consul over the phone, and the consul concluded that Iran would not issue a travel document because he is not in their system and is not recognized as a citizen. Mr. Sadeghe Memar asserts that this unsuccessful October 2025 phone call is the only effort that has been made to obtain a travel document from Iran and, without further efforts, his removal is not reasonably foreseeable. He additionally argues that removal is not reasonably foreseeable

2

because of the recent military conflict between the United States and Iran and uncertainty around when it might end.

The Warden first argues that the court lacks subject matter jurisdiction over Mr. Sadeghe Memar's habeas petition under 8 U.S.C. § 1252(g) and § 1252(b)(9). The court has thoroughly considered its jurisdiction to review post-removal-order immigration detention. For reasons given before, jurisdiction is secure insofar as this opinion goes. *See Liang v. English*, No. 3:25cv1052, 2026 WL 835853, 1 (N.D. Ind. Mar. 26, 2026) (Leichty, J.).

Turning to the merits of the petition, the court follows the analysis set forth in *Zadvydas*. By statute, noncitizens who are subject to a final order of removal must be detained for a period of 90 days, during a "removal period." 8 U.S.C. §§ 1231(a)(1), (a)(2). This removal period begins on the latest of three events: (1) the date the removal order becomes administratively final, (2) the date of a reviewing court's final order if the noncitizen seeks judicial review and the court orders a stay of removal, or (3) upon the noncitizen's release from non-immigration confinement. 8 U.S.C. § 1231(a)(1)(B). Mr. Sadeghe Memar's removal period began on August 23, 2025, when the time to file an appeal expired. *See* 8 U.S.C. § 1101(a)(47)(B)(ii). It ended on November 21, 2025.

Beyond this 90-day period, certain classes of noncitizens may be detained even longer—what the statute calls inadmissible aliens (under 8 U.S.C. § 1182), those who have violated their nonimmigrant status conditions (under 8 U.S.C. § 1227(a)(1)(C)), those who have committed certain crimes, such as aggravated felonies, drug trafficking, or illegal firearm offenses (under 8 U.S.C. § 1227(a)(2)), those removable for national security or foreign relations reasons (under 8 U.S.C. § 1227(a)(4)), and those whom the Attorney

General determines to be a risk to the community or unlikely to comply with the order of removal. These noncitizens "may be detained beyond the removal period" or released on conditions of supervision. 8 U.S.C. § 1231(a)(6).[1] No one contests that Mr. Sadeghe Memar's criminal convictions allow him to be detained beyond the removal period.

"The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law," and "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. To avoid a constitutional due process problem with § 1231(a)(6), including for a noncitizen who remains in the country after being ordered removed, the law requires that his detention be limited to a reasonable time—namely "a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689; *see also id.* at 682, 690-91. The law materially defers this difficult judgment to the Executive Branch for a total six-month period, as detention then is considered presumptively reasonable to execute a removal order. *Id.* at 700-01. This period for Mr. Sadeghe Memar ended approximately February 23, 2026.

The court has the authority to review a noncitizen's detention and to decide independently whether "a set of particular circumstances amounts to detention within, or beyond, a period reasonably necessary to secure removal." *Id.* at 699; *see also* 28 U.S.C. § 2241(c)(3). "In answering that basic question, the habeas court must ask whether detention

---

[1] For noncitizens who don't fall in these categories, if they are not removed during the 90-day removal period, they must be released, subject to conditions of supervision. 8 U.S.C. § 1231(a)(3).

4

exceeds a period reasonably necessary to secure removal" and "should measure reasonableness primarily in terms of the statute's basic purpose, namely assuring the alien's presence at the moment of removal." *Zadvydas*, 533 U.S. at 699. In this, the court listens with care when the government's "foreign policy judgments"—such as the status of repatriation negotiations—are implicated and otherwise affords "appropriate leeway when its judgments rest upon foreign policy expertise." *Id.* at 700. When removal proves reasonably foreseeable, the court can consider other factors (such as risk of crime) and often will deny habeas relief; whereas, when removal seems attenuated or unlikely, the court will order the individual's release, albeit conditioned on appropriate terms of supervision and the noncitizen's compliance with these terms. *See id.* at 699-700.

The petitioner bears the initial burden. *See* 28 U.S.C. § 2241; *Zadvydas*, 533 U.S. at 700; *see also Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009). If he "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701 (cleaned up); *see also Suarez Martinez*, 543 U.S. at 385-86.

Mr. Sadeghe Memar's detention has passed the six-month presumptively reasonable period of detention, so the inquiry turns to whether he has provided good reason to believe his removal is not significantly likely in the reasonably foreseeable future. He need not show that deportation is "impossible" or prove "the absence of *any* prospect of removal," *Zadvydas*, 533 U.S. at 702, yet he must typically offer something more than the mere passage of time. Though Congress may have "doubted the constitutionality of detention for more

than six months," the passing of this presumptive six-month period "does not mean that every alien not removed must be released." *Id.* at 701. "To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*; *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) ("detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process"). That said, as the period of confinement grows, what qualifies as a reasonably foreseeable future conversely must shrink. *Zadvydas*, 533 U.S. at 701.

Mr. Sadeghe Memar has provided good reason to believe his removal is not reasonably foreseeable with his lack of Iranian passport or birth certificate and unrebutted assertion that Iran does not recognize him as a citizen. Moreover, the military conflict with Iran undoubtedly complicates removal prospects. *See Khodabakhsh v. English*, No. 3:26cv161, 2026 WL 1560574, 3 (N.D. Ind. May 22, 2026) (Leichty, J.) (collecting cases) ("It may be the case that the broader conflict [between the United States and Iran] is affecting efforts to obtain travel documents, but the court cannot find that the conflict will end in the reasonably foreseeable future."). Amid this context, the time that has passed works against the prospect of removal. In response to this showing, the government provides no evidence, nothing really to mention. There is no indication that any steps have been taken to request a travel document for Mr. Sadeghe Memar—no plan, no assessment of prospects, no alternatives, and no sense of timing. The government advances no other basis for detention, and the court cannot make up the difference and present argument that the government has not. Without a plan after nearly a year of detention following the final order of removal, the government has not shown a likelihood of Mr. Sadeghe Memar's removal in the reasonably foreseeable

future. Therefore, the respondent must release Mr. Sadeghe Memar under *Zadvydas*, under appropriate terms of supervision. Efforts to remove him may continue while he is released.

For these reasons, the court:

(1) GRANTS the petition for writ of habeas corpus [4] and ORDERS the respondent to release Eiman Ostad Mohammad Sadeghe Memar on appropriate conditions of supervised release and to certify compliance with this order by filing a notice with the court by **July 20, 2026**; and

(2) DIRECTS the clerk to email a copy of this order to the Warden of the Miami Correctional Facility at the Indiana Department of Correction to secure his release.

SO ORDERED.

July 17, 2026                                    *s/ Damon R. Leichty*
                                                Judge, United States District Court